TIMOTHY PULLEN, CAROLINE REYNOLDS and ELLEN RANSDALE v. R. B. HART, LINN HUNTER, Trustee, and WILLIAM HUNTER; WILLIAM HUNTER, Appellant.

Division One, March 14, 1922.

1. **PARTITION:** Action at Law: Demurrer to Plaintiff's Evidence. In pure law cases, if defendant demurs at the close of plaintiff's case, and such demurrer is overruled and he then puts in his evidence, he will not be precluded from urging in the Supreme Court that on the whole evidence no case was made for plaintiff, although he may not have filed a second demurrer to the evidence at the close of the case. By proceeding after demurrer is overruled, he only takes the chance of aiding plaintiff's case, but loses no other right.

2. ——: ——: ——: **Motion for New Trial.** Where, at the close of the evidence for plaintiff in a partition suit, defendant filed a demurrer to such evidence to the effect that defendant demurs to the testimony offered on behalf of plaintiff and moves the court to render judgment against plaintiff and in favor of defendant, the question of error in the court's action in overruling such

demurrer is sufficiently raised by defendant's motion for new trial specifying among other grounds therefor that the judgment and finding of the court is (1) against the evidence and the weight of the evidence, (2) is for the wrong party and is against the law and the evidence and (3) because the plaintiff had no title to partition and all the title is in defendant.

3. ———: ———: **Plaintiff's Title: Common Source.** In an action at law for partition of land, if plaintiff's title is put in issue by defendant, then plaintiff must prove his title just as title is ordinarily proved, but for that purpose he need not necessarily go back to the Government. If there be a common source of title, (1) admitted, (2) assumed or (3) proved, then, in either case, plaintiff can rest upon this common source and make proof of title from such common source forward; otherwise, he must trace his title back to its beginning.

4. ———: ———: ———: ———: **Through Same and Different Persons.** If one party claims through a single individual and the other claims through two or more individuals, one of whom is the same through whom the first party claims, there is no common source of title.

5. ———: ———: ———: **Failure to Prove: No Common Source.** In this case, inasmuch as plaintiff's title was put in issue by defendant and there was no common source of title either admitted, assumed or proved, and plaintiff failed to prove his title from the Government, the judgment of the court finding and declaring his title is wrong and must be reversed.

6. ———: ———: ———: **Title After Acquired by Defendant.** Where plaintiff in a partition suit did not claim title under one of the defendants, but on the contrary claimed against him, the fact that another of the defendants had at one time made a warranty deed to the land involved to such one of the defendants and had afterwards acquired another title to the land along with the interest of his said grantee in such land, in no way aided the plaintiff in showing title or a common source of title to such land.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*Ward & Reeves* for appellant.

(1) The court erred in admitting incompetent, immaterial and irrelevant evidence. Development Co. v.

Clayton, 219 S. W. 601; Bell v. Brinkman, 123 Mo. 270. (2) A court cannot partition land unless all the heirs and all parties interested in the land are before the court. Even the petition must show they have all the heirs in court, and every person having interest in such premises must be made a party, and in the trial if it is shown that all parties are not interested then judgment cannot be had. Secs. 1997, 1998, R. S. 1919; Hills v. Rule, 121 Mo. 248; Johnson v. Johnson, 170 Mo. 34; Rogers v. Miller, 48 Mo. 378; Dameron v. Jamieson, 71 Mo. 97; Robertson v. Brown, 187 Mo. 452; Troll v. St. Louis, 257 Mo. 721; Harper v. Hudgin, 211 S. W. 63. And this defect of parties is never waived. Hyles v. Rule, 121 Mo. 248. (3) The judgment and finding of the court is wrong, ordering partition, because plaintiffs have no title. (a) Joint tenancy being in issue, plaintiffs must show they and defendants hold the land as tenants in common. It is only when the land is held in joint tenancy, tenancy in common, or coparcenary that partition will lie under our statute, and unless such holding be established there is an end of the partition. Forder v. Davis, 38 Mo. 115. (b) Again, parties seeking partition must have either actual or constructive possession of the land sought to be partitioned. Chamberland v. Waples, 193 Mo. 96. (c) Plaintiffs, having no actual possession must rely upon constructive possesion before they can partition, and constructive possession depends upon plaintiffs having title. And plaintiffs, having no interest in the land, cannot maintain an action for partition. Hyles v. Rule, 49 Mo. App. 630. (d) Plaintiffs showed no title in themselves to this land; for where they have no possession, and title is denied, "the plaintiff must prove his interest in the land beginning with the Government." In other words, if he relies upon a paper title, such paper title must be complete and adequate. Nall v. Conover, 223 Mo. 488. (e) Plaintiffs, however, might show title beginning with a common source; but in this case, where plaintiffs claim under one source of title, and defendants claim under that and two or more other sources of title,

then there is no common source of title. Nall v. Conover, 223 Mo. 477; Bishop v. Bloker, 235 Mo. 617; Hunter v. Land & Coop. Co., 246 Mo. 135. (f) The after-acquired title of Hunter through sheriff's deed of April 12, 1917, would not inure to the benefit of plaintiffs, who were not holding under Hart. Development Co. v. Clayton, 219 S. W. 601; Dunavant v. Bloker, 188 Mo. App. 90; Lockwood v. Meade, 71 Kan. 741; Powell v. Crowe, 204 Mo. 489. (g) Plaintiff's ancestors never had any title and therefore plaintiffs never inherited any. Maynor v. Land & Tbr. Co., 236 Mo. 722. (h) The tax title obtained by William Hunter on April 12, 1917, conveyed the title of R. B. Hart, Silas Cummings, Horace S. Stephens, John M. Cummings, et al. The suit was also against the unknown heirs, unknown devisees, etc., of Silas Cummings, Horace S. Stephens and John M. Cummings. The record owner of this land was the two Cummings and Stephens. They were sued as non-residents and also suit against their unknown heirs, etc. And suit may be prosecuted in that way and the judgment is good. Organ v. Bundell, 184 S. W. 102; Peltier v. St. Louis, 237 Mo. 168; Hambel v. Laury, 264 Mo. 168; Schmitzer v. Rankin, 192 Mo. 35; Simonson v. Dolan, 114 Mo. 176; Sec. 12945, R. S. 1919. (i) Appellant William Hunter was not bound by the judgment had quieting title brought by these plaintiffs against R. B. Hart. Neither was he bound by the interlocutory judgment in the partition suit by these plaintiffs against R. B. Hart, and neither was he bound by the judgment of R. B. Hart against these plaintiffs in the quiet-title suit, for the reason, in neither of those cases was William Hunter a party. No one is barred by a judgment unless made a party to the suit. Forder v. Davis, 38 Mo. 116; Bell v. Brinkman, 123 Mo. 27; Development Co. v. Clayton, 219 S. W. 601.

*N. C. Hawkins* for respondent.

(1) This (an action in partition under the statute without equitable issues) is an action at law. Franke v. Franke, 213 S. W. 41. (a) At the close of the plain-

tiffs' evidence in chief, the defendant William Hunter offered a demurrer to the evidence which was refused and he saved his exception. But he did not stand on this demurrer and waived the same, in that, after it was refused he offered evidence in his own behalf. Riley v. O'Kelley, 250 Mo. 660. (b) Moreover, defendant failed to assign this action of the court as error in his motion for a new trial, wherefore the same is not now for review. Lusk v. Commission, 210 S. W. 72; Maplegreen v. Trust Co., 237 Mo. 362-63. (c) Defendant did not by demurrer or answer or orally at the trial sugest to the court that any party not a party to the action might be interested in the property involved herein. Hence the point that all interested parties are not before the court is waived and comes too late. Sanders v. Kaster, 22 S. W. 133. (d) Defendant failed to offer a demurrer to the evidence at the close of all the evidence. This is an admission that there was substantial evidence, if competent, to sustain the issues the plaintiffs were required to sustain. "It is a theory defendant cannot be allowed to take back on appeal." Lumber Co. v. Neidermeyer, 187 Mo. App. 186; Heller v. Ferguson, 189 Mo. App. 492. (e) Moreover, this court will not, in the absence of a demurrer to the evidence at the close of the case, review the evidence to ascertain whether or not it was substantial. Dooden v. Woolen Mills, 216 S. W. 534. (f) A jury was waived. The defendant asked no declarations of law or finding of facts and none was given. The finding of the judge sitting as the trier of the facts is therefore conclusive, is based on competent evidence (the evidence having been admitted to be substantial by failing to offer a demurrer). Trust Co. v. Hill, 223 S. W. 434; Reader v. Williams, 216 S. W. 738; Hunter v. Weil, 222 S. W. 472. (2) If Hart owned any title by inurement the judgment of August 10, 1917, after the possible inurement was conclusive as to him. If Hunter was the owner of the true title from Hart, the judgment of March 11, 1915, was conclusive as to him (as privy to Hart). Case v. Sipes, 217 S. W. 309; State ex rel. v. Patton, 271 Mo.

559; Lukens v. Ins. Co., 269 Mo. 574; Hutchinson v. Patterson, 226 Mo. 182-83-84; Armor v. Frey, 253 Mo. 475; 23 Cyc. 1253, sec. 5, b; 1256, f; 1257 (III) (A); Sugg v. Duncan, 238 Mo. 422. (a) These judgments foreclosed the issue of title both as to Hart and as to Hunter and prevented them side-stepping the issue on trial. If the true paramount title was in Cummings, Stephens and Cummings or any one else except Hart at the time of the tax sale that title inured to Hart under Hunter's warranty deed of March 3, 1911, and Sec. 2266, R. S. 1919, and the judgment of March 3, 1915, and August 10, 1917, after the tax deed of April 12, 1917, concluded Hart. (3) The three judgments show conclusively that the issue of title between the parties hereto is not a proper subject of further litigation and has been improperly injected and forced into the case by the appellant, so that the plaintiffs were not required to show a title in themselves or a title by common source. The subject-matter of the three former judgments was title, the same as here. However, if the element of *res adjudicata* be discarded and plaintiffs thrown upon their proof of title or common source, it is apparent they were not required to establish a conclusive or invulnerable case of either title or a common source. At the utmost all they could be required to do would be to establish a prima-facie case of one or the other, by evidence or evidence coupled with presumptions of law. Brooks v. Roberts, 220 S. W. 13; State ex rel. v. Ellison, 268 Mo. 243. (4) Where title is properly drawn in issue in a strictly legal action, unless a common source of title be assumed, admitted or shown, the plaintiff must show a paper title or title by limitations in himself or those under whom he claims; that is, he must adduce substantial evidence tending to show one or the other of such facts. In this case it is admitted that plaintiffs did adduce such substantial evidence in that defendant did not offer a demurrer to the evidence at the close of the case. Dooden v. Woolen Mills, 216 S. W. 524. (5) The tax deed of April 12, 1917, is a nullity. It was a farce. It was a perversion of the

processes of the law to improper purposes. Under a proper proceeding defendant might be adjudged entitled to reimbursement from plaintiffs for their pro rata part paid out in good faith in quieting the title in this way, but he may not base a title on titleless claim which he extinguished by a fiction of law in the payment of his own tax. Kohle v. Hobson, 215 Mo. 213; 38 Cyc. 40, sec. D; p. 48, sec. 2.

GRAVES, J.—This is a suit in partition. The subject of partition is eighty acres of land in Pemiscot County. The petition is an ordinary one in partition, averring, however, that the plaintiffs are only entitled to one-eighteenth interest each in the lands, which interests had been fixed by judgment in a previous suit. They also averred that partition in kind could not be made without great prejudice to their interests, and asked that the land be sold and the proceeds divided. Defendants, excepting William Hunter, filed a general denial by way of answer. This is the showing made in the appellant's abstract, which governs. The abstract says: "The other defendants filed answer and denied generally all the averments and allegations in plaintiffs' petition." The brief of appellant has a different line of facts as to these answers, but we must follow the abstract. William Hunter answered as follows:

"Comes now the defendant, William Hunter, and for his special answer herein to plaintiffs' petition denies that he is a tenant in common with the plaintiffs in and to the lands in question; denies that plaintiff has any right, title or interest whatever in and to the land in question; denies that the land in question is subject to partition and states the facts to be that plaintiff has no right, title, interest or estate in and to said lands, and that said title and all of it in and to said land is well vested in this defendant and that the land is not subject to partition here, and further answering alleges the facts to be that the plaintiffs have no right, title or interest whatever in and to said land and that the whole title is

well vested in the defendant, and having fully answered prays to go hence without day and with his costs.''

· The real issues are raised by this answer. The trial court found and adjudged as follows:

''The court finds that at the time of the filing of this suit the plaintiffs, Timothy Pullen, Caroline Reynolds and Ellen Ransdale, and the defendants, R. B. Hart, Linn Hunter and Wm. Hunter were the owners in fee and tenants in common of, in and to the lands involved in this suit and hereinafter described, and at the time the plaintiffs were the owners of a one-eighteenth undivided interest each therein, and that the defendant R. B. Hart was the owner of the fifteen eighteenths undivided interests therein; that the defendant R. B. Hart, on March 3, 1911, executed and delivered to defendant Linn Hunter, as trustee for the defendant William Hunter, beneficiary, his certain deed of trust conveying said lands thereby (and other lands) to secure the payment of the sum of $11,200, which deed of trust is recorded in Book 41, at page 640, of the deed records of Pemiscot County, Missouri, and is unsatisfied of record, and that the said defendants Linn Hunter and William Hunter were at the time of the filing of this suit the owners of the interest conveyed by said deed of trust.

''The court finds, however, that since the filing of this suit the defendant William Hunter claims to have acquired all the right, title and interest of the defendants R. B. Hart and Linn Hunter, in and to said lands by reason of a certain alleged tax sale and deed made by the sheriff of Pemiscot County on April 12, 1917, to J. W. McFarland, and by deed from said McFarland to defendant William Hunter, and that defendant R. B. Hart, in this action, by his answer disclaims all right, title or interest in said lands and defendant Linn Hunter has made no answer whatever.

''The court finds that at the time of this trial the plaintiffs, and the defendant Wm. Hunter, are the owners in fee and the tenants in common of, in and to said lands described as follows, to-wit:

"The east half of the northeast quarter of Section 10 in Township 19 north, Range 12 east, in Pemiscot County, Missouri, and that the respective interests of said parties are as follows:

"Timothy Pullen, Caroline Reynolds and Ellen Ransdale a one-eighteenth undivided interest each, and defendant William Hunter fifteen-eighteenths undivided interest, and the court further finds that said lands cannot be divided in kind without great prejudice to the owners thereof, and that the same should be sold for a division, and the proceeds thereof divided among the parties in interest as found herein by the court."

Sale was ordered and the proceeds were to be divided as per the terms of this interlocutory decree. From such interlocutory judgment in partition, William Hunter has appealed. Pertinent facts and the points made will be noted in the opinion.

I. Pertinent facts from the Bill of Exceptions may be thus stated: Plaintiffs offered the following record title: (1) Warranty deed from William Hunter and wife to R. B. Hart, for the land involved here and other lands, said deed bearing date of March 3, 1911. (2) Application of R. B. Hart to the County Court of Pemiscot County for a patent of date October 18, 1912, in which application it is averred that one Wm. G. Gray was the purchaser of said land from Pemiscot County, and had paid in full therefor, and that he, the said Hart, had by mesne conveyances acquired the title of Gray, and he prayed that a patent be issued to him. (3) Patent from Pemiscot County to Hart, reciting and confirming the matters set out in the application aforesaid. (4) Deed of trust of date 3rd day of March, 1911, from Hart to Linn Hunter, trustee for William Hunter. (5). Judgment in Circuit Court of Pemiscot County, at February Term, on March 11, 1915, wherein Timothy Pullen, Caroline Reynolds and Ellen Ransdale were plaintiffs, and R. B. Hart was defendant. In this judgment the court found that each plaintiff was entitled to a three-

*Facts.*

eighteenths interest in the land, but in the judgment proper it is adjudged that they recover of Hart an undivided eleven-eighteenths interest in the land. (6) Interlocutory judgment in partition, in the Circuit Court of Pemiscot County, in which the present three plaintiffs were plaintiffs, and R. B. Hart, defendant. By this interlocutory decree in partition, the court found the plaintiffs to be entitled to a three-eighteenths interest, and Hart to a fifteen-eighteenths interest in the lands. This case seems to have gone no further than the interlocutory judgment, and the present suit seems to have followed, because the deed of trust aforesaid was discovered. (7) Sheriff's deed under a judgment in a tax suit by Pierce, Collector, v. R. B. Hart, Linn Hunter, William Hunter, Silas L. Cummins and others, to J. W. McFarland. This tax suit is of date August 25, 1916. The present plaintiffs were named as parties to that suit, but not served personally, while there was a personal service on R. B. Hart and Linn Hunter. There was also an order of publication, which if necessary will be noted later. (8) Quitclaim deed from J. W. McFarland to William Hunter of date April ——, 1917. (9) Judgment in case of R. B. Hart (July Term of Pemiscot Circuit Court, 1917) against these plaintiffs and many others. The court found in this judgment that the present plaintiffs had a three-eighteenths interest in the land, and R. B. Hart had a fifteen-eighteenths interest therein.

The defendant Hunter offered two lines of title, one from the Government to him through the county patent obtained by Hart upon the sale to Gray, and a second line said to be offered to demonstrate that plaintiffs had no title. This last line was offered on the theory that the title in plaintiffs' ancestors, Edward and Timothy Pullen, was based on a void tax deed by Peter H. Scott to Hina C. Schult in September, 1883. From these facts the real contentions can be gathered.

II. At the outset we are met with the serious contention of counsel for respondents that this is a suit at law, and inasmuch as the defendant filed no demurrer to

the evidence at the close of the whole case, he thereby admitted that there was a case to go to the trier of the facts, and cannot now question the findings made.

**Demurrer to Plaintiff's Evidence.** This in the face of the fact that defendant did file a demurrer to the evidence at the close of the plaintiffs' case. We shall not stop to consider the question as to whether or not the statutory action in partition is, under the pleadings before us, legal or equitable. Nor will we consider and pass upon the deeper question as to whether or not such statutory proceeding, can be such a legal action as to bring it within the strict rules applicable to actions at law generally. We have ruled that certain questions therein are triable by a jury, if demanded. [Benoist v. Thompson, 121 Mo. 660; Gann v. Thurston, 130 Mo. 1. c. 348.]

For the purposes of the present point, we shall proceed upon the theory that the rules applicable to actions at law generally apply to this case. This we do without discussing anew the questions supra. The defendant did file a demurrer to the evidence at the close of plaintiffs' case, and such being overruled he put in his own case. Can he now urge that the evidence as a whole shows no case made by plaintiffs? To this we unhesitatingly say, Yes. There has been some loose language used in the books about waiving the demurrer by refusing to stand upon it, and by putting in the evidence for defendant. Some such language appears in the cases cited by respondents, but we prefer to go to the basic ruling upon the question. When we do that, we are forced to rule that the only thing waived is the right to insist that plaintiffs' evidence, standing alone, fails to make a case. In other words, in strict law actions, if the defendant demurs upon the close of plaintiff's case, and does not stand upon such demurrer, but puts in his own case, he only takes the chances of aiding plaintiff's facts, by his own facts. He does not thereby lose the right to insist, without further demurrer, that the whole evidence, introduced by both sides, fails to disclose a case for plaintiff. In Bowen v. Ry. Co., 95 Mo. 1. c. 275, BLACK,

J. (who always wrote cautiously and clearly), said: "Thus far we have considered the evidence as it stood at the close of the case. A demurrer was interposed at the close of the plaintiff's evidence, which was overruled. If, after making such a demurrer, the defendant puts in his evidence, and the evidence as a whole entitles the plaintiff to go to the jury, the demurrer to the plaintiff's evidence will not be considered here. This is true though the demurrer should have been sustained, as the case stood, when it was interposed." This is far from saying that the defendant cannot urge that the whole evidence fails to show a case for plaintiff. To like effect is Guenther v. Ry. Co., 95 Mo. l. c. 289, whereat this court, through BRACE, J., said: "The defendant is not in a position to urge the overruling of the demurrer to the evidence, as reversible error, having waived the same by putting in its own evidence, and the case will have to be examined and determined *upon the whole evidence in the case.* [Bowen v. Railroad, ante, p. 268.]" This ruling also is far from saying that defendant is precluded from saying that upon the whole evidence plaintiff has no case. On the contrary, it is express authority for the proposition, that if defendant, in a law suit, has demurred to the evidence at the close of plaintiffs' case, he will be permitted to argue at the end that on all the evidence (both for plaintiff and defendant) the facts fail to make out a case for the plaintiff. He has, by putting in his evidence, only increased the plaintiff's chance of showing a case upon the facts, but has not precluded himself from urging that on the whole evidence no case is made for plaintiff.

Shortly following the two cases, supra, RAY, C. J., in McPherson v. Ry. Co., 97 Mo. l. c. 255, said: "At the conclusion of the evidence in plaintiff's behalf, an instruction in the nature of a demurrer to the evidence was asked by defendant and was refused by the court, and this action is the first ground of error complained of in this court. By putting in its own evidence, defendant thereby waived its exception in this behalf, except that the court may consider the same in connection with all

the evidence in the cause, as we have recently held in the cases of Bowen v. Railroad, 95 Mo. 268, and Guenther v. Railroad, 95 Mo. 288.''

In the foregoing we have this court definitely saying just what we meant by the two cases in 95 Mo. supra, and it accords with our present views, but is adverse to respondents' contention in the instant case. A like holding is made in Hilz v. Ry. Co., 101 Mo. l. c. 42, whereat it is said: ''As to the objection that the plaintiff's testimony did not make a prima-facie case, and that therefore the demurrer to the evidence should have been sustained, it is sufficient to say, that defendant waived said objection by introducing its own evidence, and that the evidence in such cases will be considered as a whole in passing on objections of this character. Our recent decisions so hold. [Bowen v. Railroad, 95 Mo. 268; Guenther v. Railroad, 95 Mo. 286; McPherson v. Railroad, 97 Mo. 253.]''

The case relied upon by respondents is that of Riley v. O'Kelley, 250 Mo. l. c. 660. We hardly think this case goes as far as respondents contend. It cites the Hilz Case, supra, and the writer must have had in mind what we have quoted from this Hilz Case. Upon the whole we do not agree to the contention of counsel for respondents in the matter now considered. In pure law cases, if defendant demurs at the close of the plaintiff's case, he will not be precluded from urging in this court that on the whole evidence no case was made for plaintiff, although he may not have filed a second demurrer to the evidence at the close of the case. In proceeding after demurrer is overruled he only takes the chance of aiding the plaintiff's case, but loses no other right.

III. It is next urged that the motion for new trial is not broad enough to cover the alleged error in refusing to sustain this demurrer. The demurrer read: ''The defendant, William Hunter, demurs to the testimony offered on behalf of plaintiff and moves the court to render judg-

**Motion for New Trial.** ment against plaintiff and in favor of defendant, William Hunter." It will be noted that it is not in the form of an instruction, but is a demurrer, in fact, to the sufficiency of the evidence. No instructions were asked in the case by either side. The court made a finding of facts, which was included in its judgment. This motion for new trial is short, and we copy it as follows:

"Comes now the defendant, William Hunter, and moves the court to grant him a new trial for the following reasons, to-wit:

"1. Because the judgment and finding of the court is against the evidence and the weight of the evidence.

"2. Because the judgment and finding is for the wrong party and is against the law and the evidence.

"3. Because the court erred in admitting incompetent, immaterial and irrelevant testimony on part of plaintiff, over defendant's objection and exception at the time.

"4. Because the court erred in refusing competent, relevant and material evidence offered by defendant.

"5. Because the plaintiffs had no title to partition, and all the title is in defendant.

"6. Because all parties were not in court and even under plaintiffs' theory partition can not be had."

We are inclined to view that this motion sufficiently raises the question. It does not specifically mention the demurrer, supra, but there are at least two or three grounds (1, 2 and 5) which in substance cover the matter.

IV. It will be noticed that the plaintiffs put in evidence only a partial proof of title. They begin with a warranty deed from William Hunter to R. B. Hart. Plaintiffs in partition must prove their title, if such is put in issue, just as title is ordinarily proven. **Partition: Plaintiff's Title: Common Source.** Their title was put in issue in this case by the answer of Hunter. We do not mean, however, that such plaintiff must necessarily go back to the Government in showing title. If

there be a common source of title (1) admitted, (2) assumed, or (3) proven, then in either case they can rest upon this common source, and make their proof of title from such common source forward. [Harrison Machine Works v. Bowers, 200 Mo. l. c. 235; Nall v. Conover, 223 Mo. l. c. 488.]

In this case there was no admitted common source of title, nor did the parties assume a common source of title. The whole trend of the trial shows that defendant was not proceeding upon the theory that there was a common source of title. In such case there is and can be no assumed common source of title. The question then is, have plaintiffs proven a common source of title? If they have not their case fails, because absent a common source of title (1) agreed upon, (2) assumed or (3) proven, they must trace their title back to its beginning. [Nall v. Conover, 223 Mo. l. c. 488, supra.]

Under the status of the record in the present case, as discussed supra, it will suffice if all the evidence (plaintiffs' and defendant's) shows a common source of title. By common source of title we mean that both parties claim through the same person or persons. If one party claims through a single individual, and the other claims through two or more individuals (one of whom is the same through whom the first party claims) there is no common source of title. [Nall v. Conover, 223 Mo. l. c. 494.]

We shall take the paper title of the plaintiffs first in determining whether or not there is a proven common source of title. Under plaintiffs' proof that common source must be either Hunter himself, or someone in the proven chain after Hunter's first deed. This because plaintiffs started their record title with a warranty deed from William Hunter to R. B. Hart. After this deed to Hart from Hunter, it appears that Hart in an effort to perfect his record title procured the patent from Pemiscot County. When he got this patent from the county, his title then ran: United States to State of Missouri; State of Missouri to Pemiscot County; Pemiscot Coun-

ty to R. B. Hart. This it is argued was done by Hart under his deed from Hunter. It might have been so done, and it might not have been so done. Hart might have discovered that the Hunter deed (although a warranty) conveyed to him no title, and acted upon that theory. What showing he made to the county court is not before us, except as the recitations in the patent speak. This recitation is to the effect that Hart had acquired the equitable title of William G. Gray, who had bought and paid for the land. There is no showing that Hunter ever had this Gray equitable title. Nor is there a showing how Hart acquired it, save the bare recitation in the patent. It follows that neither the Hunter deed, the Hart application for a patent, nor the county patent itself, shows a common source of title as between these parties, plaintiffs and defendant Hunter. We are taking the instruments as we come to them. The effect of Hunter's warranty may become pertinent later. Up to the present point the plaintiffs' evidence fails to show a common source.

The next link in the title is the trust deed back from R. B. Hart to Linn Hunter for the benefit of William Hunter, covering this land and other lands. Within itself it shows no common source of title.

Next we have the judgment of March 15, 1915, in the case of Timothy Pullen, Caroline Reynolds and Ellen Ransdale v. R. B. Hart, wherein it was found that these plaintiffs (who are the present plaintiffs) had an interest in this land. This conveyance, by judgment, might be urged as material in showing common source of title in Hart, but not otherwise. But does it do this? We think not. It was a suit to quiet title. The plaintiffs in such suit (plaintiffs here) were not claiming under Hart, but against him. Common source of title can not be shown in that way.

The next link is the interlocutory decree in partition obtained by the present plaintiffs against Hart on April 13th, 1916. This interlocutory decree in partition was never made final. It was abandoned, and the present suit

filed. The interlocutory decree was never appealed from, and either party might have appealed from it, but could await the final decree, if they so desired. No final decree was ever entered. This is of but little value in plaintiffs' chain of title. It was based upon the decree to quiet title, supra, and was no more evidence of a common source of title than was the decree to quiet title.

The next link is the sheriff's tax deed in case of Pierce, Collector, v. Hart et al. This recites a tax judgment against a number of persons. William Hunter was sued, but not personally served. Plaintiffs were sued, but not personally served. John W. McFarland was the purchaser at this sale, and the interests, or alleged interests of divers persons passed to him by this deed. There was an order of publication, as well as a summons in this tax suit. This publication, among other things, recites:

". . . and shows to the clerk by said petition that among other things plaintiff verily believes that there are persons, and there are persons, interested in, or who claim to be interested in the subject-matter of the petition herein, whose names he cannot insert therein because they are unknown to him; that the interest of said unknown persons so far as known to him, are derived from Silas Cummins, Horace S. Stephens, John M. Cummins, John T. Scott, John L. Rentch, the persons to whom the title to the east half of the northeast quarter of Section 10, Township 19, Range 12 east, and the northeast quarter of the southeast quarter of Section 10, Township 19, Range 12 east, the land described in said petition, was last transferred or vested, and that such unknown persons derive or claim to derive their title and claim to the land in question, as described in plaintiff's petition, as heirs, consorts, devisees, donees, alienees, immediate, mesne, remote, voluntary or involuntary grantees of the said Silas Cummins, Horace S. Stephens, John M. Cummins, John T. Scott, John L. Rentch.

"Whereupon it is ordered by the clerk in vacation that said unknown persons, to-wit, the unknown heirs, consorts, devisees, donees, alienees, immediate, mesne,

remote, voluntary, or involuntary grantees of the said Silas Cummins, Horace S. Stephens, John M. Cummins, John T. Scott, John L. Rentch, and that the said non-resident defendants be notified by publication that plaintiff has commenced a suit against them in this court, the object and general nature of which is to enforce the lien of the State of Missouri for certain state taxes, county taxes, school fund taxes, drainage taxes, jail taxes and road taxes, all of which are delinquent, due and owing and unpaid in the sum of and for the years set out below. . . ."

To say the least, this deed to McFarland is no evidence of a common source of title, because said McFarland was claiming title through divers persons, and it might be urged that he claimed some interest through plaintiffs themselves. But it suffices to say that his deed was basis for a claim of title through more parties than Hunter and Hart, and was therefore no evidence of a common source. [Nall v. Conover, 223 Mo. l. c. 494, supra.]

The next link is a deed from McFarland to Hunter, which as evidence of a common ource of title can have no more probative force than the deed to McFarland. This because it transferred to Hunter the same diverse interests which McFarland received by his tax deed.

The plaintiffs' evidence fails to show a common source, barring the effect of Hunter's warranty deed, which we will take later.

V. The most vigorously made contention of the respondents, is that as Hunter made a warranty deed to Hart, he, Hunter, could not later acquire a good title for himself, but such good title, if later acquired, would inure to his grantee, Hart, or his grantees. It may be conceded, without deciding, if Hunter sold by warranty deed to Hart, at a time when he had no title, and later he procured from another the title, that such title would inure to Hart, or his grantees, yet we fail to see how this helps the plaintiffs. They are not grantees of Hart.

Their only connection with Hart has been in suits against him, wherein instead of claiming through Hart, they claimed against him. The after-acquired title of Hunter would not inure to them under any circumstances made to appear in this record. The tax judgment under which Hunter bought in 1917, was against Hart, and the judgment in the instant case says Hart disclaimed interest in the land. Hunter, in fact, bought Hart's interest, as well as other interests, if any, at this tax sale. Would Hunter's purchase of Hart's interest inure to Hart under the warranty deed previously given? Hart did not think so when he disclaimed title, nor do we think the law so runs. It is the title procured from an outside source which inures to a grantee under a warrant of title, and not the title coming from the grantee himself in such waranty deed. However, this is beside the question, because these plaintiffs were not grantees of Hart, and no title could inure to them by reason of the warranty deed from Hunter to Hart. Hunter was no party to any suit wherein these plaintiffs were adjudged an interest in these lands, and of course was in no way bound by such judgments. As to these plaintiffs he was and is free to assert his rights, so far as the case made by them shows.

*Warranty Deed: After-acquired Title.*

VI. The evidence for the defendant Hunter did not help the plaintiffs in the proof of a common source of title. Its general character we have mentioned. First it tended to show a record title from the Government to Hunter, including of course the tax sale against Hart. It further tended to show that plaintiffs' ancestors got their claim of title through a void sheriff's deed, and that plaintiffs were without title. So that the evidence of defendant did not help the matter of a common source of title. Nor does the rebuttal evidence, for plaintiffs, in the form of the records and deed in a tax proceeding, wherein Hunter and Howell were purchasers, and a deed from Howell to Hunter, assist the plaintiffs in proving a common source

*No Common Source.*

of title. Absent a proven common source of title, as we are forced to find, the present judgment is wrong.

The judgment is therefore reversed, and the cause remanded to be proceeded with in accordance with the views herein expressed. All concur.