CHARLES D. MATTHEWS, JR., v. JOHN M. KARNES, Appellant.—9 S. W. (2d) 628.

Division One, July 30, 1928.

*John T. McKay* for appellant.

964

*Bailey & Bailey* and *Oliver & Oliver* for respondent.

ATWOOD, P. J.—This is a proceeding to determine interest and quiet title to sixty acres of land in Dunklin County, Missouri, under Section 1970, Revised Statutes 1919. From an adverse judgment defendant appealed.

The original petition was filed in the Circuit Court of Dunklin County, September 25, 1920. Plaintiff went to trial on his amended petition which was the same as the original petition, except that it included John M. Karnes as an additional party defendant, who entered his appearance by joining the other defendants in the filing

of an amended answer. Plaintiff's petition contained the usual allegations in proceedings of this kind and asked the court to try, ascertain and determine the rights, title, interest and estate of plaintiff and defendants, respectively, in and to said land; to preclude, bar, enjoin and estop defendants from thereafter setting up any right, title, claim or interest therein; to adjudge plaintiff entitled to the possession of said land, and to require defendants to surrender to him possession thereof. Defendants, in their amended answer, allege their ownership of said land, and deny each and every allegation in said amended petition except that they claim some right, title and interest in said land. The answer further pleads that they are innocent purchasers for value and without notice; that the law of this case has been determined by a decision rendered in the United States Circuit Court of Appeals reported in 255 Federal Reporter at page 759; and the ten-year statute of limitations, Section 1305, Revised Statutes 1919, is specifically pleaded as a defense. Plaintiff filed a reply in the nature of a general denial, and further setting up the invalidity of defendants' alleged source of title and reciting some of the history of the case in the Federal court.

At the close of all the evidence, plaintiff having dismissed as to all defendants except John M. Karnes, by direction of the court, the jury returned a verdict finding "the issues for the plaintiff on the question of adverse possession." Thereupon the jury was discharged from further service, and the court sitting as a jury further found from the evidence "that on the 20th day of August, 1867, the County Court of Dunklin County, Missouri, upon the finding that William Pruett had made full payment for the land described in the petition, issued a patent covering said land in the name of said William Pruett, and that said patent was issued under the provisions of the Act of 1857 relating to the disposal of swamp lands; and that said patent conveyed title to the said William Pruett and his heirs and that title of plaintiff herein is deraigned from said patent, and that the title to the lands described in plaintiff's petition, to-wit: "The south half of the southwest quarter of the northwest quarter and the southeast quarter of the northwest quarter all in Section Thirty-two (32), Township Seventeen (17), North, of Range Eight (8) East, in Dunklin County, Missouri, is vested in the plaintiff; and that plaintiff is the sole, legal and equitable owner and entitled to the possession of the above-described land, and that defendant has no right, title or interest in and to said land or any part or parcel thereof." Thereupon the court ordered, adjudged and decreed that "the defendant has no right, title or interest in or to said land and that the defendant be and he is hereby forever barred from asserting any right, title, claim or interest in and to said land or any

part or parcel thereof, and that the plaintiff have and recover of and from the defendant the possession of the above-described land, together with the costs of this suit, and that writ of restitution and execution issue therefor."

Plaintiff put in evidence certain acts of the General Assembly of Missouri relating to swamp lands and disposition of the same in the County of Dunklin and certain other counties of the State; also, a certified copy of an order by the County Court of Dunklin County made October 2, 1883, which is not set out in appellant's abstract of the record; also, a certified copy of an entry in a Patent Register referred to in said order of the Dunklin County Court, which copy, including attached certificate of the County Clerk of Dunklin County, is as follows:

"No. 239.

"Register office at Kennett, Dunklin County, State of Missouri, December 27th, 1860, it is hereby certified that in pursuance of law, William Pruett of Dunklin County, State of Missouri, on this day purchased of the Register of this office the Lot or N½ of SW¼ and W½ and SE¼ of NW¼ of Section No. 32, in Township No. 17 N. of Range 8 E., containing 200 acres, at the rate of one dollar per acre, amounting to $200 for which the said Wm. R. Pruett has made payment in full as required by law.

"Now therefore, be it known that on presentation of this certificate to the County Court of Dunklin County, State of Missouri, the said William Pruett shall be entitled to receive a patent for the Lot above described.

"W. M. HARKEY, Register.

"State of Missouri, County of Dunklin,—ss.

"I, Chas. S. Shultz, Clerk of the County Court in and for said County, hereby certify that the above is a true and correct copy of the certificate of Purchase, as same appears in Patent Register No. 2, Page 20, in my office.

"Witness my hand as Clerk, and the seal of said Court. Done at office in Kennett, Missouri, this the 10th day of April, 1916.
" (Seal)

"(Signed) CHAS. S. SHULTZ, Clerk."

Plaintiff also put in evidence the original patent from Dunklin County, Missouri, conveying the land here in dispute and other lands to William Pruett, dated August 20, 1867, and filed for record in the office of the County Clerk of Dunklin County on the same date, which patent among other things contains the following recital:

"Whereas, William Pruett, of Dunklin County, State of Missouri, has deposited in the Clerk's office of the County Court of Dunklin County, in the State of Missouri, a certificate of the Register of Swamp Lands, for said county, whereby it appears that full pay-

ment has been made to the said County of Dunklin, by the said William Pruett for the following described lands, to-wit:'' (here follows description of lands including land here in dispute).

It was admitted by plaintiff and defendant that William Pruett died leaving G. W. Pruett, a son, and Martha Pruett, a daughter, who were the only surviving heirs of William Pruett at the time of his death. Plaintiff also introduced in evidence certified copies of conveyances by these heirs and their assigns through whom he claims title.

The foregoing proof of paper title, insofar as it is challenged in this proceeding, was before us in Matthews v. Greer, 260 S. W. 53. While all the points here raised were not urged in that case, it was there definitely held (l. c. 54) that even if William Pruett was dead at the time the patent was issued, nevertheless, the equitable title to the land therein described vested in his heirs. From this it follows that Point II of appellant's brief in the instant case, that it was error for the trial court to refuse to submit the question as to whether William Pruett was living or dead at the time the patent was issued, must be overruled. For the same reason defendant's declaration of law numbered 3 covering the same point was properly refused.

In Point III appellant also states that it was error for the trial court to admit in evidence the certified copy of the certificate issued by the Register of Dunklin County to William Pruett, dated December 27, 1860, for the reason that said certificate was no evidence of title under the law governing the sale of swamp lands. While we have held that a certificate of entry standing alone is no evidence of title (Nall v. Conover, 223 Mo. 1. c. 491; Whitman v. Giesing, 224 Mo. 1. c. 615), yet the register of lands was required to make certificates of entry in triplicate and file one in his office. [Section 4 of act passed at first session of Eighteenth General Assembly, Laws 1854, p. 155.] These files were public records required by law to be kept and were notice to the world of matters appearing therein. [Mosher v. Bacon, 229 Mo. 338; Russ v. Sims, 261 Mo. 1. c. 27.] Therefore, at least for the purpose of showing notice it was proper to admit a copy of this certificate duly certified by the County Clerk of Dunklin County in whose custody it then was, and this point is also ruled against appellant.

In Point VI appellant says that it was error for the court to admit in evidence Certificate No. 60 bearing date of August 20, 1867,

and purporting to be a patent issued by the Dunklin County Court on that date to William Pruett for the land in controversy, "because said patent shows on its face that it is based upon the certificate of the Register of Swamp Lands which is no evidence of payment or title and the patent is void on its face." Section 1 of the Swamp Land Act approved February 27, 1857 (Laws 1856, p. 271), provides that whenever the county courts of Dunklin and other named counties "shall be satisfied that full payment has been made according to the terms of sale for any of the lands sold as swamp lands, under any of the acts of the General Assembly of this State, authorizing the same, they shall cause to be issued to the purchaser, his heirs or assigns, a patent for the same." As we said in Matthews v. Greer (1. c. 53), supra, this act and amendatory acts "give all authority to the county court and required it to determine the question of payment before issuing a patent thereunder." Even though a certificate of entry standing alone is not evidence of title, and even if a recital of full payment made by the purchaser would with more propriety appear in the receiver's certificate than in the register's certificate, yet upon the record in this case we cannot say that the recital in the register's certificate that the purchaser of the land, William Pruett, had "made payment in full as required by law," was untrue. However, the members of the county court at the time this patent was issued were in position to know. In the absence of proof to the contrary the presumption of right action attends their conduct, and the patent having been issued we will assume that they complied with what the law required of them and satisfied themselves that the purchase price had been fully paid. The recital in the patent to which appellant objects certainly does not show that full payment of the purchase price was not made. Under the law applicable thereto (Sec. 3, Act 1857, supra) the patent is prima-facie evidence of title to the land therein described and was properly admitted in evidence.

In Point IV appellant says that "the court erred in rejecting evidence tending to show that the defendant herein is an innocent purchaser for value without notice as against the plaintiff." Just what this evidence was does not appear from appellant's assignment of errors or his brief, but in his printed argument it is said that "the proof offered tends to show that the Pruett patent had never been recorded in the Recorder's Office of Dunklin County; that plaintiff herein had said patent in his possession and knew what the patent contained; that plaintiff knew the land records of Dunklin County had been destroyed by fire subsequent to the date of the issuing of the Pruett patent; knew that Tennie C. Langdon, defendant's grantor herein, claimed said land

under the Sugg patent and was paying taxes on the same; knew that said land was wild and uncultivated and not in the actual possession of anyone, and with knowledge of all these facts he never placed his Pruett patent on record. Defendant offered testimony further tending to show that he had the land abstracted, had his title passed upon by an attorney before he purchased the land; that his attorney advised him so far as the record showed, no patent had ever been issued to Pruett; that he had no knowledge that any patent had ever been issued to William Pruett, either actual or constructive, until after he had purchased said land and had expended large sums of money in improving the same." Defendant claimed title under what was known as the "Sugg" patent, issued by Dunklin County under date of June 2, 1870. Plaintiff's proof not only showed that the triplicate original certificate of entry showing entry of the land in question by William Pruett on December 27, 1860, was on file in the office of the Register of Swamp Lands, but it further showed that the "Pruett" patent under which he claimed was placed of record in the office of the County Clerk of Dunklin County on August 20, 1867, the date it was issued. This was proof of sufficient notice and it was not necessary to show that this first patent was recorded in the office of the Recorder of Deeds prior to the issuance of the second patent in 1870. [Mosher v. Bacon, 229 Mo. l. c. 357.] The case of Wilcox v. Phillips, 199 Mo. 289, and other cases cited by appellant arose upon tax suits and are not in point. The proffered evidence was properly rejected. For the same reason the trial court properly refused defendants' "innocent purchaser" declarations of law numbered 1 and 4.

Appellant's points VII and VIII are that "the judgment is for the wrong party" and that "the judgment is against the evidence, the weight of the evidence and the law under the evidence." Such assignments of error are indefinite and standing alone have been held objectionable. [Bond v. Williams, 279 Mo. l. c. 227; Fitzroy v. People's Bank of Cardwell, 234 S. W. (St. L. Ct. of App.) 865.] No specific matters are brought to our attention under these points and they are ruled against appellants.

Points IX and X charge error in the rejection and admission of evidence. The rejected evidence went to defendant's contention that he was an innocent purchaser without notice, and we have already held that such evidence was properly rejected. On the assignment that evidence was erroneously admitted, appellant makes no specification other than the matters upon which we have already ruled.

The remaining specifications of error appear in the first, fifth and last of the eleven points presented by appellant, and chiefly relate to the special defense of the ten-year statute of limitations. Appellant's first point is that the court erred in sustaining a demurrer to the evidence at the close of all the evidence and directing the jury to return a verdict against the defendant on the statute of limitations. Defendant's proof was that his adverse possession commenced when his predecessor in title, E. V. McGrew, took possession of the land in controversy shortly after receiving his deed which bore date of December 7, 1910. This suit was commenced in the Circuit Court of Dunklin County on September 25, 1920, less than ten years after defendant's adverse possession began. It was tried on an amended petition which was the same as the original petition except John M. Karnes was made an additional party defendant. The date of the filing of the original petition was, therefore, the date of the commencement of the suit. [Bricken v. Cross, 163 Mo. l. c. 453.] Defendant Karnes acquired title through the original defendants after suit was filed, and the date on which the original petition was filed is to be taken as the date of the commencement of the suit against him. [37 C. J. 1067, n. 77.] Did the commencement of this suit suspend the running of the statute of limitations?

We have frequently held that the commencement of a possessory action such as ejectment suspends the running of statutes of limitations. [Dunn v. Miller, 75 Mo. l. c. 272; Snell v. Harrison, 131 Mo. l. c. 503; Estes v. Nell, 140 Mo. l. c. 651; Swearengin v. Swearengin, 202 S. W. (Mo. Sup.) l. c. 557.] The original petition as well as the amended petition filed in this cause alleged ownership of the land in plaintiff, sought complete relief, and specifically asked that he "be adjudged entitled to the possession of said property and that the defendant be required to surrender said possession to him and for all proper and necessary writs, orders and process necessary to execute the decree and judgment of the court." Respondent contends that the commencement of this suit had the same effect on the ten-year statute of limitations as an action in ejectment would have had. Appellant insists that the proceeding instituted by plaintiff was in no sense a possessory action, that possession could not be decreed therein, and that its commencement did not interrupt the statute of limitations.

In Bedford v. Sykes, 168 Mo. 8 (decided in 1902), we held that, in a suit to quiet title under the Act of 1897, the court could not render judgment for plaintiff for the possession of the land. This statute was thereafter amended (Laws 1909, p. 343) by subjoining the following:

"And upon the trial of such cause, if same be asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any one of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties. thereto as if rendered in any other, different or separate action prosecuted therefor."

If the language of the 'foregoing amendment is not sufficiently broad to authorize the determination of the right of possession of the land in question, when such is "asked for in the pleadings of either party," we are at a loss to know how it could be made so. In Ball v. Woolfolk, 175 Mo. l. c. 285, speaking of the Act of 1897, we said: "The statute is highly remedial and beneficial in its purposes, and supplements the old equitable remedy to remove a cloud from title and is much more comprehensive in its scope." When, in Bedford v. Sykes, supra, we held that the right of possession could not be determined in a proceeding under this statute, it evidently occurred to the legislative mind that the scope of the statute should be comprehensively extended, and the above amendment resulted. We are aware that in Koehler v. Rowland, 275 Mo. l. c. 588, Division Number Two of this court held that this amendment has not "enlarged the scope of the statute so as either to repeal the statutes relating to ejectment or to provide for giving possession in an action brought under it." While this amendment does not evidence any intention to repeal statutes relating to "any other or different action" that might have been brought by the parties, it does plainly say that upon the trial of the cause, if asked for in the pleadings of either party, "the court may hear and finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties," etc. If this means, as in effect it is held in the Koehler case, supra, that such relief will not be granted unless asked for in the usual form of pleadings required in such actions, either in a separate count or if not timely objected to in the same count, then the comprehensive language used confers no new right and the amendment means nothing, for under our liberal code this right was already well recognized. [Mann v. Doerr, 222 Mo. l. c. 11.] The

plain legislative intent was to make this statute sufficiently comprehensive to afford such relief, "if same be asked for in the pleadings of either party," even though, as in the instant case, the facts relating thereto be not pleaded in a separate count or with all the formality usually required in such "other or different action." This statute permits an action to quiet title to be prosecuted by one not in possession, and as the Supreme Court of Iowa said in Lees v. Wetmore, 58 Iowa, l. c. 172: "We know of no reason or principle of law which stands in the way of the plaintiff, in such a case, uniting a prayer to recover possession with the prayer that the cloud on his title be removed, as was done by the substituted petition in this case." [32 Cyc. 1356, n. 70.] Even though as a general rule possession of the land may not be delivered as a mere incident to a bill to quiet title, yet the rule may be varied by statute. [32 Cyc. 1381, n. 93; Landregan v. Peppin, 94 Cal. 465; People v. Center, 66 Cal. 551.] We conclude that the trial court had full power to determine the right of possession in this case, that the filing of the original petition herein interrupted the running of the ten-year statute of limitations, and that peremptory instruction was properly given. It follows that defendant's second declaration of law, mentioned in appellants' fifth point, to the effect that if the court found and believed from the evidence that defendant and those under whom he claimed held adverse possession of the land in question for ten years next before the filing of the answer containing the affirmative defense of the statute of limitations he should find for defendant, was properly refused. What we have said also disposes of appellant's final point that the trial court was without power to decree possession.

Having found no reversible error in the record presented it is ordered that the judgment be affirmed. All concur.